UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CESPREGI POINDEXTER, JR.,

               Plaintiff,

v.

UNKNOWN ANDERSON et al.,

               Defendants.

_____/

Case No. 1:25-cv-1042

Honorable Ray Kent

**<u>OPINION</u>**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis.* Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (Compl., ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g., Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Maddox, Tighe, Baker, Stone, and Weed. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Anderson and McGlowen: official capacity claims, First Amendment claims premised upon retaliation for assaulting a staff member or because of the nature of Plaintiff's offense, Eighth Amendment conditions of confinement claims concerning placement in an observation cell without food and water and denial of clothing and proper meals, Eighth Amendment excessive force claims, and Eighth Amendment medical care claims. Plaintiff's First Amendment claim for retaliation based upon Plaintiff's grievances and complaints and Eighth Amendment conditions of confinement claims related to contaminated food against Defendants Anderson and McGlowen remain in the case.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

I.      **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains, however, occurred at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. Plaintiff sues the following ECF staff in their official and personal capacities: Corrections Officers Unknown Anderson, Unknown McGlowen, Unknown Stone, Unknown Maddox, Unknown Weed, Unknown Tighe; and Sergeant Unknown Baker. (Compl., ECF No. 1, PageID.1–2.)

Plaintiff alleges that he arrived at ECF on April 18, 2023. (*Id.*, PageID.4.) Plaintiff suffers from bradycardia, meaning that Plaintiff's "heart will stop[,] start[,] speed up[,] and be irregular beats[.]" (*Id.*) Plaintiff alleges that, from April 18, 2023, until May 1, 2023, he was placed in observation without food, water, and medical treatment. (*Id.*) "[C]orrectional officer[]s and staff fail[ed] to be aware of medical issues." (*Id.*)

Plaintiff claims that, on April 23, 2023, he was assaulted by "staff." (*Id.*) Plaintiff acknowledges that he was "found guilty of an assault & battery misconduct," which occurred on that same date. (*Id.*, PageID.3.)

Plaintiff alleges that Defendants Anderson and McGlowen retaliated against him following his conviction for assault and battery by harassing him and tampering with his food. (*Id.*) Plaintiff also claims that he was generally denied clothing and proper meals, that he was subjected to tampered food "in retaliation for staff assault," and that he was denied medical attention and "treated cruelly and unusually because the nature of his [offense]." (*Id.*, PageID.5.)

On May 9, 2024, Plaintiff woke up late. (ECF No. 1-1, PageID.11.) Defendant Anderson did not announce that the door was closing, and the door hit Plaintiff's elbow while Plaintiff was

4

leaving his cell for chow lines. (*Id.*) Plaintiff filed a grievance against Defendant Anderson the following day. (*Id.*)

On June 10, 2024, Plaintiff was in line for dinner when he watched an inmate set aside a tray for him. (Compl., ECF No. 1, PageID.3; ECF No. 1-1, PageID.14.) When Plaintiff stepped out of line, the inmate set the tray to the side. (Compl., ECF No. 1, PageID.3; ECF No. 1-1, PageID.14.) Plaintiff told Defendants Anderson and McGlowen that he did not want the tray, and that he finds "hair and all types of things" in his food. (Compl., ECF No. 1, PageID.3; ECF No. 1-1, PageID.14.) When Plaintiff refused his tray, Defendants Anderson and McGlowen denied Plaintiff food and told Plaintiff that he would be "taken to 4-block." (Compl., ECF No. 1, PageID.3; ECF No. 1-1, PageID.14, 17.) Plaintiff filed a grievance against Defendants Anderson and McGlowen related to this incident. (*Id*)

Plaintiff alleges that, after he filed his grievance against Defendants Anderson and McGlowen, other prisoners told Plaintiff that Defendants Anderson and McGlowen instructed them to make sure that Plaintiff got the tray set aside for him. (Compl., ECF No. 1, PageID.3.)

On August 6, 2024, Plaintiff again told Defendants Anderson and McGlowen that another inmate set Plaintiff's tray aside for him. (*Id.*, PageID.19.) Plaintiff told Defendants Anderson and McGlowen that he had the right to refuse the tray, but they forced Plaintiff to take the tray set aside or miss lunch. (*Id.*, PageID.19.) Plaintiff took the tray and claims that the top half of the pizza was smashed. (*Id.*, PageID.20.)

Plaintiff alleges that "correctional officer" failed to investigate Plaintiff's complaints of tampered food, threatened to take Plaintiff to "the hole" if he refused his food tray, and threatened Plaintiff with forced medication if Plaintiff refused to sign off on grievances against Defendants Baker and Stone. (*Id.*, PageID.3.)

As relief for the events described in Plaintiff's complaint, Plaintiff seeks compensatory and punitive damages. (*Id.*, PageID.6.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271

(1994).

### A.    Official Capacity Claims

Plaintiff brings claims against Defendants in their official as well as personal capacities. A

suit against an individual in his or her official capacity is equivalent to a suit against the

governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58,

71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments

are immune under the Eleventh Amendment from suit in the federal courts, unless the state has

waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute.

*See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*,

438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has

not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S.

332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court.

*Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting

through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See*

*Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison v.*

*Michigan*, 722 F.3d 768, 771 (6th Cir. 2013).

Here, Plaintiff seeks only monetary relief. (Compl., ECF No. 1, PageID.6.) However, as

noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages.

Similarly, Plaintiff may not seek monetary damages against Defendants in their official capacities.

*Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities

are "persons" under § 1983."). Therefore, the Court will dismiss Plaintiff's official capacity claims

for failure to state a claim upon which relief may be granted.

**B.      Claims Against Defendants Maddox, Tighe, Baker, and Stone**

Plaintiff lists Defendants Maddox and Tighe in the caption of his complaint but does not

mention these Defendants within the factual allegations of his complaint or otherwise identify any

actions that may be attributed to them. Further, Plaintiff alleges that he was subjected to retaliation

for refusing to sign off on grievances against Defendants Baker and Stone; however, Plaintiff does

not identify any actions taken by Defendants Baker and Stone anywhere within his complaint.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular

defendants. *See Twombly*, 550 U.S. at 544 (holding that, to state a claim, a plaintiff must make

sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has

consistently held that damage claims against government officials arising from alleged violations

of constitutional rights must allege, with particularity, facts that demonstrate what each defendant

did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir.

2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where

a person is named as a defendant without an allegation of specific conduct, the complaint is subject

to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v.

Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the

complaint did not allege with any degree of specificity which of the named defendants were

personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*,

No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal

involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th

Cir. 1998)); *Rodriguez v. Jabe*, 904 F.2d 708 (6th Cir. 1990) ("Plaintiff's claims against those

individuals are without a basis in law as the complaint is totally devoid of allegations as to them

which would suggest their involvement in the events leading to his injuries.").

Plaintiff does not set forth any factual allegations to describe what Defendants Maddox, Tighe, Baker, and Stone personally did to violate Plaintiff's constitutional rights. While Plaintiff makes many of his allegations against "staff," Plaintiff's reference to "staff" generally is insufficient to implicate any named Defendant. "Summary reference to a single, five-headed 'Defendants' [or officers or staff] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). Thus, Plaintiff's claims against Defendants Maddox, Tighe, Baker, and Stone fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

### C.    First Amendment Retaliation Claims

Plaintiff alleges that he was subjected to retaliation for filing grievances against Defendants Anderson and McGlowen, for refusing his tray, for refusing to sign off on grievances against Defendants Baker and Stone, and for his assault on staff and the nature of his offense. (Compl., ECF No. 1, PageID.3–5.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff cannot maintain a First Amendment claim for alleged retaliation for assaulting a staff member or because of the nature of his offense. "The First Amendment does not protect violence." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916 (1982). As the Sixth Circuit explained in *Thaddeus–X*, "if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one" of the three-step retaliation analysis. *Thaddeus-X*, 175 F.3d at 394; *see Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (holding that insolence is not protected conduct for First Amendment purposes). Moreover, Plaintiff's "offense" does not constitute speech or conduct protected by the First Amendment. Therefore, any claim premised upon retaliation for assaulting a staff member or because of the nature of Plaintiff's offense will be dismissed.

Plaintiff also describes raising verbal complaints regarding his tray and filing grievances against Defendants Anderson, McGlower, Baker, and Stone. An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). Therefore, the Court will assume without deciding that Plaintiff engaged in protected activity for purposes of the first element of a retaliation claim when he raised verbal complaints regarding the state of his tray or when he filed or refused to sign off on grievances.

Plaintiff describes that Defendants Anderson and McGlowen told Plaintiff that he would be "taken to 4-block" and would not receive food when Plaintiff complained of and refused his contaminated food tray. (Compl., ECF No. 1, PageID.3; ECF No. 1-1, PageID.14, 17.) When Plaintiff complained about the state of his tray on another occasion, Defendants Anderson and McGlowen forced Plaintiff to take the tray or miss lunch. (ECF No. 1-1, PageID.19.) Plaintiff also claims that, after filing his grievance against Defendants Anderson and McGlowen, other prisoners

10

told Plaintiff that Defendants Anderson and McGlowen instructed them to make sure that Plaintiff got the tray set aside for him. (Compl., ECF No. 1, PageID.3.) Although Plaintiff has by no means proven his claims, taking these allegations as true, the Court will allow Plaintiff to proceed with his First Amendment retaliation claims against Defendants Anderson and McGlowen to the extent premised upon his grievances and verbal complaints.

### D.    Eighth Amendment Conditions of Confinement Claims

Plaintiff alleges that, from April 18, 2023, until May 1, 2023, he was placed in observation without food and water. (Compl., ECF No. 1, PageID.4.) He claims that he was generally denied clothing and proper meals and was given food containing hair, bugs, and other foreign objects. (*Id.*, PageID.5.) He also claims that Defendants Anderson and McGlowen required him to accept trays that had been tampered with on June 10, 2024, and August 6, 2024. (Compl., ECF No. 1, PageID.3, 19–20; ECF No. 1-1, PageID.14.) The Court will construe these allegations as raising Eighth Amendment claims for unconstitutional conditions of confinement.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment

11

within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part

of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*,

503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Consequently, "extreme deprivations are

required to make out a conditions-of-confinement claim." *Id.*

 For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a

sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate

indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010)

(citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard

to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate

indifference standard to conditions of confinement claims). The deliberate-indifference standard

includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at

35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under

conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the

subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or

safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a

substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act

with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of

recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial

risk to inmate health or safety may be found free from liability if they responded reasonably to the

risk, even if the harm ultimately was not averted." *Id.* at 844.

 First, as to Plaintiff's claims that he placed in an observation cell without food and water,

and was generally denied clothing and proper meals, Plaintiff does not identify the individuals

responsible for these conditions. "Each [g]overnment official, his or her title notwithstanding, is

only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 676. Plaintiff's complaint does not contain any facts that would suggest that any named Defendant was involved in placing Plaintiff in an observation cell without food and water, denying him clothing, or denying him proper meals. Thus, Plaintiff cannot state an Eighth Amendment claim against Defendants based upon these conditions.

As to Plaintiff's claims that Defendants Anderson and McGlowen required that Plaintiff accept trays of contaminated food on two occasions and instructed other prisoners to make sure that Plaintiff got the tray set aside for him, "[t]he Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate . . . food." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832). While isolated incidents of foreign bodies, even rodents and insects, in the food served to prisoners does not meet the objective standard for stating a conditions of confinement claim, *Tucker v. Rose*, 955 F. Supp. 810, 815 (N.D. Ohio 1997) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)), purposefully serving an inmate contaminated food may state an Eighth Amendment claim, *Thompson v. Michigan Dep't of Corr.*, 234 F.3d 1270 (6th Cir. 2000). Here, Plaintiff alleges more than isolated incidents of contaminated food. He alleges that he told Defendants Anderson and McGlowen of the issues with his food trays, including that they had had been contaminated with hair, bugs, and other items, and that these Defendants not only required that Plaintiff take the trays, but also told other prisoners to make sure that Plaintiff received the contaminated trays. Taking Plaintiff's allegations as true and drawing all reasonable inferences in his favor, the Court will allow Plaintiff to proceed with his Eighth Amendment claims against Defendants Anderson and McGlowen related to contaminated food trays.

### E.        Eighth Amendment Excessive Force Claims

Plaintiff claims that he was assaulted by "staff" on April 23, 2023. (Compl., ECF No 1. PageID.4.) Plaintiff further alleges that, on May 9, 2024, Defendant Anderson did not announce that the door was closing and the door shut on Plaintiff's elbow, cutting Plaintiff's arm. (ECF No. 1-1, PageID.11.) The Court will liberally construe these allegations as raising claims of excessive force.

As relevant to excessive force claims, the Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson*, 503 U.S. at 9. "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

First, as to Plaintiff's claim that he was assaulted by "staff," Plaintiff fails to identify the named of the alleged assailant(s), thereby failing to state a claim under § 1983. *See Iqbal*, 556 U.S. at 676 (holding that government officials are liable only for their own misconduct); *Lanman*, 529 F.3d at 684 (requiring that a plaintiff allege facts that demonstrate what each defendant did to violate the asserted constitutional right). Moreover, even if Plaintiff intended to bring his claim of

14

excessive force against Defendant Weed, his claim is precluded by the factual findings of the hearing officer in connection with Plaintiff's Class I misconduct.

The Class I Misconduct Hearing Report attached to Plaintiff's complaint indicates that Plaintiff was charged with "assault and battery (staff victim)" in connection with an April 23, 2023, incident. (ECF No. 1-1, PageID.21.) On May 1, 2023, a hearing was held before non-party Administrative Law (ALJ) Judge Tucker. (*Id.*) Plaintiff was present and had the opportunity to present evidence and make a statement, though he chose not to do so. (*Id.*). In finding Plaintiff guilty of the charged offense, ALJ Tucker made the following factual findings:

> Officer Weed had contact with Prisoner as he was attempting to apply restraints to Prisoner. Although he was successful in applying one restraint, Prisoner then pulled away from Officer Weed, attempting to pull the restraints into his cell. Pulling away from staff and attempting to pull restraints into one's cell are both acts of physical resistance.

(*Id.*, PageID.22.) ALJ Tucker further found Plaintiff's statements that he felt "unsafe" at the time of his interaction with Defendant Weed to be not credible. (*Id.*)

ALJ Tucker's findings are entitled to preclusive effect. The Sixth Circuit test for determining whether factual findings made within a Class I misconduct hearing are entitled to preclusive effect was established in *Peterson v. Johnson*, 714 F.3d 905, 912 (6th Cir. 2013) (citing *University of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986)). Pursuant to *Peterson*, facts found during a Michigan prison hearing are given preclusive effect when (1) the state agency, in this case the Hearing Officer on behalf of the agency, was acting in a "judicial capacity," (2) the hearing officer resolved the disputed issue of fact that was resolved was properly before him or her, (3) the prisoner had a sufficient opportunity to litigate the issue, and (4) the findings of fact would be given preclusive effect by the Michigan courts. *Id.* at 912–14. The Sixth Circuit in *Peterson* determined that a major misconduct hearing (*i.e.*, a Class I Misconduct Hearing) satisfies the first and last criteria as long as the other two criteria are satisfied. *Id.* And an examination of the Hearing

Report attached to Plaintiff's complaint demonstrates that the remaining criteria are satisfied as well.

Accordingly, for each of the foregoing reasons, the Court will dismiss Plaintiff's Eighth Amendment claim concerning the events of April 23, 2023.

As for Plaintiff's claim against Defendant Anderson, while the Court is sympathetic to the fact that Plaintiff's elbow was hit by the door, his complaint is devoid of facts from which the Court could infer that Defendant Anderson acted "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Here, Plaintiff alleges only that he was "late wakin[g] up" and was leaving his cell for chow lines when he was hit by the cell door. (ECF No. 1-1, PageID.11.) Plaintiff faults Defendant Anderson for not announcing that the door was closing; however, Plaintiff does not allege that Defendant Anderson knew that Plaintiff had woken up late and was still in his cell, or that Plaintiff would otherwise be struck by the closing door. Accordingly, the Court will also dismiss Plaintiff's excessive force claim against Defendant Anderson.

### F.    Eighth Amendment Medical Care Claims

Plaintiff alleges that he was denied medical care. The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A claim for the deprivation of adequate medical care under the Eighth Amendment has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo*

16

*Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence. . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

Here, Plaintiff cannot hold any named Defendant liable for the lack of medical treatment. As discussed above, "each [g]overnment official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 676. Plaintiff's complaint does not contain any facts that would suggest that any named Defendant was involved in any medical care provided to Plaintiff or the lack thereof. Thus, Plaintiff fails to state an Eighth Amendment claim against Defendants for inadequate medical care.

### Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Defendants Maddox, Tighe, Baker, Stone, and Weed will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants Anderson and McGlowen: official capacity

17

claims, claims of First Amendment retaliation premised upon retaliation for assaulting a staff member or because of the nature of Plaintiff's offense, Eighth Amendment conditions of confinement claims concerning placement in an observation cell without food and water and denial of clothing and proper meals, Eighth Amendment excessive force claims, and Eighth Amendment medical care claims. Plaintiff's First Amendment claim for retaliation based upon Plaintiff's grievances and complaints and Eighth Amendment conditions of confinement claims related to contaminated food against Defendants Anderson and McGlowen remain in the case.

An order consistent with this opinion will be entered.

Dated:    September 25, 2025                          /s/ Ray Kent
                                                      Ray Kent
                                                      United States Magistrate Judge